UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BRANDON LIZOTTE (#432994)**                               CIVIL ACTION

**VERSUS**

**NATHAN CAIN, ET AL.**                                         NO. 15-0513-BAJ-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 18, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BRANDON LIZOTTE (#432994)**                                    **CIVIL ACTION**

**VERSUS**

**NATHAN CAIN, ET AL.**                                          **NO. 15-0513-BAJ-EWD**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are Defendants' Motions to Dismiss (R. Docs. 24 and 36).[1] These Motions are opposed.

*Pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, former Warden Nathan Burl Cain, Legal Programs Director Trish Foster, Col. Donovan Dupuy, Lt. Shanika Jarvis, Lt. Peter Lollis, Capt. Michael Jack, Lt. Mitchell McGehee, Capt. Joseph Landry, Capt. Kristen Hooper, Major Trent Barr, MSgt. S. McGehee, MSgt. Mandy Reagan and Major Gary Aymond. In short, Plaintiff complains that his constitutional rights were violated on August 14, 2014 when defendant Aymond confiscated a draft manuscript of a work of fiction that Plaintiff was writing that apparently included descriptions of sexual conduct and references to a former LSP employee. When Plaintiff's sister called the prison to complain about the confiscation, defendant Aymond verbally threatened Plaintiff and issued Plaintiff a false disciplinary report, contending that Plaintiff's manuscript was "contraband" because it "contained

---

[1] The first Motion to Dismiss (R. Doc. 24) is filed on behalf of all defendants except Gary Aymond and seeks dismissal of Plaintiff's claims asserted against Defendants in their official capacities. The second Motion to Dismiss (R. Doc. 36) is filed on behalf of defendants Burl Cain, James LeBlanc, Trish Foster, Shanika Jarvis, Kristen Hooper, Trent Barr, Peter Lollis and Joseph Landry, and addresses Plaintiff's substantive claims asserted against these defendants.

very explicit words throughout the whole thing."  Plaintiff alleges that at a subsequent disciplinary board hearing, he accepted a "plea bargain" and received a reprimand in connection with the referenced disciplinary charge.  Plaintiff then submitted an administrative grievance to prison officials, complaining about defendant Aymond's conduct and threats.  Plaintiff complains that defendant Aymond and other officers thereafter learned of the grievance and conspired to retaliate against Plaintiff.  According to Plaintiff, this retaliation took the form of a second disciplinary report issued on September 5, 2014 and in defendant Aymond subjecting Plaintiff to excessive force on the same date.  Plaintiff further complains that he was thereafter wrongly found guilty of the referenced disciplinary report and sentenced to punitive segregated confinement at Camp J at LSP.  In addition to the foregoing, Plaintiff complains that on several occasions, prison officials have refused to allow him to receive publications that he has ordered from outside the prison.

In Defendants' initial Motion to Dismiss (R. Doc. 24), all of the defendants, with the exception of defendant Gary Aymond, seek dismissal on jurisdictional grounds, relying upon Rule 12(b)(1) of the Federal Rules of Civil Procedure,[2] of Plaintiff's claims asserted against them in their official capacities.[3]  In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

---

2   Although the Caption of Defendants' initial Motion to Dismiss makes reference to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the body of the Motion relies solely upon Rule 12(b)(1).

3   Plaintiff's original Complaint (R. Doc. 1) made clear that he was suing all but two of the defendants in both their individual and official capacities.  Plaintiff's First Amended complaint (R. Doc. 4), which was submitted in response to a deficiency notice sent by the Court, was unclear as to whether he was suing Defendants in their individual or their official capacities.  Considering that the Court liberally interprets the pleadings of *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court will interpret Plaintiff's Complaint, as amended, as naming Defendants in both capacities.

In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29. In addition, a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is also not seen to be a claim asserted against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101. Of course, Plaintiff must still establish a deprivation of his constitutional civil rights in order to obtain any entitlement to relief.

Based upon the foregoing, the Court finds that Defendants' initial Motion to Dismiss (R. Doc. 24) should be granted in part and denied in part, dismissing Plaintiff's claim for monetary damages asserted against the moving defendants in their official capacities, but reserving to Plaintiff his individual-capacity claims asserted against them for monetary damages and his official-capacity claims for prospective injunctive relief.

Turning to the second Motion to Dismiss (R. Doc. 36), certain of the defendants, Burl Cain, James LeBlanc, Trish Foster, Shanika Jarvis, Kristen Hooper, Trent Barr, Peter Lollis and Joseph Landry, next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim against them upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court

clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, Plaintiff alleges that during a routine search conducted on August 14, 2014, defendant Aymond confiscated a manuscript found in Plaintiff's property. According to Plaintiff, the manuscript contained only "written depictions of normal sexual behavior," and there are no rules at the prison that prohibit such writing. Plaintiff alleges that shortly after the confiscation, his sister called the prison numerous times, asking to speak with defendant Aymond's supervisor, but was told by defendant Shanika Jarvis that a supervisor was not available and was routed to defendant Aymond. Angry over these calls, defendant Aymond allegedly confronted Plaintiff and threatened to "show" Plaintiff for inducing his sister to call the prison, which comment Plaintiff took as a threat of harm. In addition, defendant Aymond also issued Plaintiff a disciplinary report, charging Plaintiff with possessing "contraband" and describing the manuscript as containing "explicit words throughout the whole thing."

At a subsequent disciplinary board hearing in connection with the referenced disciplinary charge, Plaintiff agreed to plead guilty to the "Contraband" charge in exchange for a mere reprimand.

Plaintiff alleges that after the foregoing incident involving defendant Aymond, he submitted an administrative grievance ("ARP") to prison officials, complaining regarding the threat of harm made by Aymond. According to Plaintiff, defendant Trish Foster received and reviewed that grievance and then forwarded it for a response to the Unit Warden's office where defendant Shanika Jarvis was working as a secretary. Plaintiff complains that it was deliberate indifference for defendants Foster and Jarvis not to investigate or take seriously Plaintiff's claim in the grievance that he was threatened with harm by defendant Aymond.

In addition to the foregoing, Plaintiff alleges that defendants Foster and Jarvis routinely provide "Voluntary ARP Withdrawal Forms" to officers at LSP, including defendant Aymond, with the understanding that it is "customary for officers to obtain inmate's signatures thereon by

any means necessary."  According to Plaintiff, defendants Burl Cain and James LeBlanc are aware of this custom or practice, and Plaintiff asserts that it was deliberate indifference to inmates' safety to allow or encourage prison officers to approach inmate complainants for the purpose of inducing them to voluntarily withdraw inmate grievances.

According to Plaintiff, on September 5, 2014 a second disciplinary report was issued, this time by defendant Donovan Dupuy, accusing Plaintiff of "having an unprofessional relationship" with a security officer, an alleged violation of Rule 30(d) of the prison rulebook.  Plaintiff alleges that this disciplinary charge was based upon the fact that a fictionalized character in Plaintiff's manuscript was a named security officer at LSP.  Plaintiff asserts, however, that the stated rule violation was inapplicable because the security officer was no longer employed at LSP.  Plaintiff further complains that the stated rule violation was later improperly changed by defendant Kristen Hooper to a Rule 30(k) violation (which prohibits spreading rumors about an officer) after it was learned that the officer was no longer employed.

On the same date, September 5, 2014, shortly after issuance of the second disciplinary report, Plaintiff was returning to his housing unit when he was called over by defendant Aymond and was led into defendant Aymond's office.  According to Plaintiff, defendants McGehee, Lollis, Landry and Jack were present at that time and were witnesses to events that culminated in defendant Aymond subjecting Plaintiff to excessive force.  As pertinent to defendants Lollis and Landry, however, who are participants in the instant motion to dismiss, Plaintiff concedes that these defendants were told to exit the office before any alleged force took place and so were neither participants therein nor in a position to intervene and prevent same.  According to Plaintiff, however, defendant Landry did make fun of Plaintiff after the incident.

Plaintiff complains that whereas he was provided with medical intervention after the alleged use of excessive force by defendant Aymond, he asserts that his complaints and injuries

were not accurately recorded and his requests for x-rays were denied. According to Plaintiff, it was not until several days later, on September 9, 2014, that photographs of his bruises were taken.

Finally, on September 19, 2014, a disciplinary hearing was apparently conducted in connection with the disciplinary report issued on September 5, 2014, which report had been investigated by defendant Hooper and had been amended to reflect an alleged violation of Rule 30(k) instead of Rule 30(d). Defendant Trent Barr apparently presided over the disciplinary hearing and allegedly denied a motion by Plaintiff to dismiss the report. Plaintiff contends that his right to substantive due process was denied in connection with the referenced disciplinary hearing, that his conduct did not fit within the parameters of Rule 30(k), that he could not have known that his actions in writing the referenced manuscript were prohibited, and that he was retaliated against for exercising his right of free speech. Plaintiff complains that he was nonetheless found guilty in connection with the referenced report and was sentenced to a transfer to punitive segregated confinement at Camp J at LSP. In addition, Plaintiff complains that his subsequent disciplinary appeals in connection with the referenced disciplinary conviction were thereafter denied by defendants Burl Cain and James LeBlanc, respectively.[4]

In response to Plaintiff's allegations, the moving defendants contend that Plaintiff has failed to sufficiently allege the violation of his constitutional rights in connection with his claims asserted against them. In this regard, 42 U.S.C. § 1983, by its terms, provides a right of redress only for violations of federal constitutional and statutory rights. *See, e.g., Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").

---

    4   Plaintiff includes other factual allegations in his Complaint that the Court will not address in this Report inasmuch as they relate to defendants who have not participated in the instant motion to dismiss. For example, Plaintiff complains that defendants McGehee and Reagan have participated in preventing Plaintiff from receiving certain publications that he has ordered from outside the prison.

The law is clear that not every wrongful act on the part of prison officials or deprivation suffered by an inmate arises to the level of a constitutional violation. Not only must the harm complained of be sufficiently serious, but the named defendant must have been directly and personally involved in violating Plaintiff's constitutional rights. *See Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

Applying the foregoing analysis first in connection with Plaintiff's claim asserted against defendant Shanika Jarvis, the Court agrees that Plaintiff has failed to state a claim upon which relief may be granted as to this defendant. Specifically, Plaintiff alleges only that defendant Jarvis (1) responded to several telephone calls made to the prison by Plaintiff's sister on the morning and afternoon of August 14, 2014 and did not relay the calls to defendant Aymond's supervisor as requested, (2) received and reviewed, while working "as a secretary" at LSP, an administrative grievance written by Plaintiff that referred to a purported threat made by defendant Aymond and did not investigate or take precautionary action, and (3) allegedly participated in distributing "Voluntary ARP Withdrawal Forms" to officers within the prison to facilitate the amicable resolution of administrative grievances.

These allegations do not amount to claims of constitutional dimension. First, there can be no question that Plaintiff does not have a constitutional right to have a telephone call made to the prison on his behalf – by a third person no less – responded to as he wishes. Further, it was not defendant Jarvis' responsibility, as a "secretary" who received a grievance forwarded to her office by a supervising official, to investigate or take precautionary action merely because the grievance referred to a non-specific inchoate threat perceived by Plaintiff. Finally, this Court recognizes and approves of the stated goal of the Prison Administrative Process to encourage the amicable

resolution of prison complaints without resort to lengthy written investigation or to litigation. *See* La. Admin. Code, Title 22, Part I, § 325(G)(1) ("Offenders are encouraged to resolve their problems within the institution informally … through communication with appropriate staff members"). To this end, prison officials and inmates alike are encouraged to communicate with each other in an attempt to resolve complaints that are susceptible of amicable resolution. This Court sees no constitutional violation in the distribution of "Voluntary ARP Withdrawal Forms" that facilitate this purpose, and Plaintiff's conclusory allegation that these forms are distributed with a tacit understanding that prison officials will coerce such withdrawals is unfounded and is not supported by any factual development. Thus, the Court finds that Plaintiff's claims asserted against defendant Jarvis are without merit and are subject to dismissal as a matter of law.

With regard to Plaintiff's claim asserted against defendant Trish Foster, the Legal Programs Director at LSP, Plaintiff makes the assertion that defendant Foster also received, reviewed and, moreover, "screened" Plaintiff's administrative grievance submitted in August 2014, wherein he complained of the purported threat of harm made by defendant Aymond, yet forwarded the grievance to the Unit Warden's office without investigation and without taking any precautionary measures to protect Plaintiff from the possibility of future harm. This claim is also not one of constitutional dimension. The referenced threat made by Aymond – purportedly simply to "show" Plaintiff – is entirely unclear and non-specific as to the nature of the potential danger posed to Plaintiff's safety and would not have placed defendant Foster on notice of a risk of serious harm. Further, and in any event, the law is clear that an alleged failure to investigate or properly respond to a prisoner's administrative grievance is not a constitutional violation, and no liability may attach as a result of such failure. *See Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Finally, to the extent that Plaintiff may have believed himself to be in actual danger at the hands of defendant Aymond, Plaintiff had a more effective means of ensuring his safety than to await an investigation

and response to his administrative grievance; he could have requested protective custody and thereby likely obtained a transfer to a more secure location within the prison.  His failure to do so during the pendency of his administrative grievance supports a finding that defendant Foster may not be found liable in connection with this claim.[5]

Plaintiff also alleges with regard to Defendant Foster, and also with regard to defendants Burl Cain and James LeBlanc, a similar assertion regarding the distribution of the above-referenced "Voluntary ARP Withdrawal Form[s] … to all officers at LSP," including the assertion that these forms, together with the practice of encouraging officers to use them to obtain voluntary dismissals of administrative grievances, is dangerous to inmates' safety and welfare.  As previously stated, however, this Court approves of the stated goal of encouraging the amicable resolution of inmate grievances, and the mere distribution of forms that may be used to effect such resolution is not itself a violation of inmates' constitutional rights.  Accordingly, in the absence of anything more than a conclusory assertion that there is a custom or practice encouraged by these defendants to coerce the withdrawal of inmate grievances, the Court sees no basis for liability in connection with this claim.

Turning to Plaintiff's allegations relative to defendants Peter Lollis and Joseph Landry, the Court notes that Plaintiff alleges only that these defendants were present in the area on September 5, 2014 when Plaintiff was allegedly subjected to excessive force by defendant Aymond in the defendant's office.  However, whereas a prison security officer may be found liable in certain circumstances if he stands by and fails to intervene to protect an inmate from a threat of harm by

---

[5]   Although Plaintiff asserts that defendant Foster should have addressed Plaintiff's grievance as if it involved a "sensitive matter" that warranted special precautionary treatment, this assertion is unfounded.  Although the formal Prison Administrative Process recognizes that some matters may be treated as "sensitive," prison rules place the onus upon the inmate to bring such matters to the attention of the Secretary of the Louisiana Department of Corrections and to explain the reason why such special treatment is warranted.  *See* La. Admin. Code, Title 22, Part I, § 325(H)(1)(b).

another officer, *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), Plaintiff makes clear in this case that defendants Lollis and Landry had exited defendant Aymond's office before any perceived threat of harm or injury arose. Thus, these defendants may not be found to be responsible for defendant Aymond's subsequent alleged use of excessive force against Plaintiff, nor may they be found to have been deliberately indifferent to Plaintiff's safety by failing to take reasonable actions to intervene to protect him. *See Ibarra v. Harris County, Texas*, 243 Fed. Appx. 830, 835 (5th Cir. 2007) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force"); *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th Cir. 1998) (noting that liability will not attach where an officer is not present at the scene of a constitutional violation). Accordingly, defendants Lollis and Landry are entitled to dismissal of Plaintiff's excessive force claim asserted against them.

In addition to the foregoing, Plaintiff includes an allegation as to defendant Landry that after the use of force by defendant Aymond, defendant Landry participated with defendant Aymond in "ma[king] fun" of Plaintiff. This claim, however, is one of mere verbal abuse or harassment, and the law is clear that mere words may not form the basis for a § 1983 cause of action. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983"); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983"); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983"). Accordingly, this claim asserted against defendant Landry is not one of constitutional dimension and should be dismissed.

Plaintiff next appears to assert a claim that he was not provided with appropriate medical attention after the alleged use of force by defendant Aymond. Specifically, Plaintiff alleges that

after the incident, medical personnel at LSP denied his requests for x-rays and failed to properly document his injuries and complaints.  *See* R. Doc. 47 at p. 9.  Plaintiff has failed to name as a defendant in this case, however, any member of the medical staff or any other person who had direct or personal involvement in his medical care and treatment.  Accordingly, in the absence of a defendant before the Court who may be found to have been personally responsible for denying Plaintiff appropriate care, *see Lozano v. Smith, supra*, there is no legal or factual basis for a finding of liability in connection with this claim.

In addition, Plaintiff has failed to provide sufficient factual detail to support a claim of deliberate medical indifference in any event.  Specifically, to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976).  Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006).  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340, 344 (5th Cir. 2016).  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).  A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it."  *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.  The deliberate indifference standard sets a very high bar.  Plaintiff must

be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*.

Applying this standard, the Court finds that there is an insufficient factual basis for a claim of deliberate medical indifference.  As noted above, Plaintiff alleges, not that medical personnel failed to provide him with treatment, but essentially that they did not adequately document his injuries.  This does not amount to a claim of constitutional magnitude.  Similarly, with regard to Plaintiff's assertion that his request for x-rays was denied, this claim is one of a mere disagreement with the opinion of health care providers, which is not actionable under § 1983.  *See Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim of deficient medical care as frivolous and noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" (*quoting Estelle v. Gamble, supra*, 429 U.S. at 107)).  Accordingly, this claim is subject to dismissal as well.

Turning to Plaintiff's claim asserted against defendant Trent Barr, it appears that Plaintiff complains that this defendant presided over Plaintiff's disciplinary proceedings conducted on September 19, 2014 and wrongly found Plaintiff guilty of violating Rule 30(k) of the disciplinary rulebook and sentenced Plaintiff to punitive segregated confinement at Camp J at LSP.  According to Plaintiff, there was insufficient evidence to find him guilty of the referenced rule violation and, because of the language of the rule, there was no way that he could have known that his manuscript was in violation thereof.  Essentially, this contention amounts to a claim that Plaintiff was denied substantive due process in connection with the referenced disciplinary proceedings.

From a substantive due process standpoint, in order for a prison disciplinary decision to pass constitutional muster, there must only be "some facts" or a "modicum of evidence" to support the finding that the inmate committed the offense in question. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). Thus, "[p]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials." *Washington v. Parker*, 53 F.3d 1282, *3 (5th Cir. 1995) (internal quotation marks omitted). The "some evidence" standard is extremely deferential, *Morgan v. Dretke*, 433 F.3d 455, 458 (5th Cir. 2005), and "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." *Washington v. Parker, supra, quoting Superintendent, Mass. Corr. Inst. Walpole v. Hill, supra*, 472 U.S. at 455. The relevant question is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. The "some evidence" standard may be met with a written report authored by a security officer with knowledge of the events described therein. *See Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Indeed, even where there is no direct evidence and the existing evidence is "meager," the board's decision must be upheld so long as there is "some evidence" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. Walpole v. Hill, supra*, 472 U.S. at 457.

As outlined above, the original disciplinary report issued against Plaintiff on September 5, 2014 accused him of violating Rule 30(d) of the prison rulebook, which Rule prohibited "[e]ngaging in non-professional relationships with an employee ...."[6] Upon investigation of Plaintiff's manuscript and its purported fictional nature, however, the violation charged against

---

[6] A District Court may take judicial notice of the record in prior related proceedings. *Missionary Baptist Foundation of America, Inc. v. Wilson*, 712 F.2d 206, 211 (5th Cir. 1983). The Court hereby takes judicial notice of the prisoner rule book approved by this Court in *Hayes Williams v. John McKeithen, et al.*, Civil Action No. 71-CV-0098-FJP (M.D. La.), *affirmed*, 547 F.2d 1206 (5th Cir. 1977), which rule book has been amended from time to time.

Plaintiff was changed to a Rule 30(k) violation, which prohibited "[s]preading rumors about an employee …." Plaintiff argues that whereas he admittedly utilized the name of a female LSP officer as a fictionalized character in his manuscript, this was not a violation of Rule 30(k) because the employee was no longer employed at LSP and, accordingly, Plaintiff contends that he could not be found to have potentially spread rumors about an "employee." *See* R. Doc. 47 at p. 10.

The Court is not persuaded by Plaintiff's argument. In the Court's view, the language of Rule 30(k) is broad enough to include *former* employees in the category of persons about whom Plaintiff was not allowed to spread rumors. Plaintiff acknowledges that defendant Barr advised Plaintiff during the disciplinary proceedings that the former employee "might one day return to work at the prison again" and so should not be the subject of false or fictionalized assertions about her. *See Id.* In addition, the Court notes that the record does not disclose the date that Plaintiff commenced writing the referenced manuscript. It is therefore possible that the former employee was still employed at LSP when Plaintiff commenced same and included her as a character therein. Considering the great deference that is accorded to prison disciplinary boards in determining the parameters of prison disciplinary rules and considering the broad and liberal standard that is applicable to the finding of guilt in connection with prison disciplinary proceedings (requiring merely "some evidence" or "any evidence"), the Court concludes that Plaintiff's substantive due process rights were not violated in connection with the referenced disciplinary matter.

Finally, also in connection with the above-referenced disciplinary proceedings, Plaintiff complains of the investigation that was allegedly conducted by defendant Kristen Hooper in connection with the charged offense and that resulted in the amendment of the disciplinary report from a charged Rule 30(d) violation to a charged 30(k) violation. Plaintiff further complains that when he sought to appeal the finding of guilt in connection with the referenced disciplinary charge, defendants Burl Cain and James LeBlanc each denied his appeal, resulting in his continued

confinement in punitive segregation.  Notwithstanding these complaints, the Court finds that these assertions do not rise to the level of constitutional violations.  As noted in a previous section of this Report, Plaintiff does not have a constitutional right to a full and fair investigation of every complaint that he makes, of every incident that may occur, or of every deprivation that he may suffer within the prison environment.  *Geiger v. Jowers, supra*.  Nor is he entitled to a fair or favorable result in connection therewith.  *Id*.  This rule applies equally in the context of both administrative and disciplinary proceedings.  Thus, Plaintiff may not be heard to complain in this case regarding the manner in which his disciplinary proceedings and disciplinary appeal were investigated, conducted or resolved, and there is no constitutional right inherent in such a claim.  Accordingly, Plaintiff's claim asserted against defendants Hooper, Cain and LeBlanc should be dismissed as to this claim.

Accordingly, based upon the foregoing, the Court concludes that the Motion to Dismiss of defendants Burl Cain, James LeBlanc, Trish Foster, Shanika Jarvis, Kristen Hooper, Trent Barr, Peter Lollis and Joseph Landry (R. Doc. 36) should be granted, dismissing Plaintiff's claims asserted against these defendants in their entirety pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state viable claims of constitutional dimension against them.

Lastly, to the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if Plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, upon a consideration of the claims remaining before the Court, the Court further recommends that supplemental jurisdiction be declined in connection with Plaintiff's potential state law claims.

RECOMMENDATION

It is recommended that the Court decline the exercise of supplement jurisdiction in connection with potential state law claims. It is further recommended that Defendants' first-filed Motion to Dismiss (R. Doc. 24) be granted, dismissing Plaintiff's claims asserted against Defendants in their official capacities for monetary damages. It is further recommended that the second-filed Motion to Dismiss of defendants Burl Cain, James LeBlanc, Trish Foster, Shanika Jarvis, Kristen Hooper, Trent Barr, Peter Lollis and Joseph Landry (R. Doc. 36) be granted, dismissing Plaintiff's claims asserted against these defendants in their entirety, with prejudice, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on August 18, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**